(No. 73240.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MICHAEL A. BLACKWELL, Appellant.

*Opinion filed January 19, 1995.*

MILLER, J., joined by BILANDIC, C.J., and HEIPLE, J., dissenting.

Charles M. Schiedel, Deputy Defender, and John J. Hanlon, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

Roland W. Burris, Attorney General, of Springfield, and James W. Glasgow, State's Attorney, of Joliet (Rosalyn B. Kaplan, Solicitor General, and Terence M. Madsen, Assistant Attorney General, of Chicago, of counsel), for the People.

JUSTICE NICKELS delivered the opinion of the court:

After a jury trial in the circuit court of Will County, defendant, Michael Blackwell, was convicted of three counts of first degree murder (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(2)), one count of aggravated battery with a firearm (Ill. Rev. Stat. 1989, ch. 38, par. 12—4.2), and one count of reckless conduct (Ill. Rev. Stat. 1989, ch. 38, par. 12—5). Defendant waived his right to be sentenced by a jury. Accordingly, the trial court

determined whether defendant was eligible for the death penalty and found that he was eligible under section 9—1(b)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(b)(3)). After considering factors in aggravation and in mitigation, the trial court sentenced defendant to death. Defendant's death sentence was stayed (134 Ill. 2d R. 609(a)) pending direct appeal to this court (Ill. Const. 1970, art. VI, § 4(b); Ill. Rev. Stat. 1989, ch. 38, par. 9—1(i); 134 Ill. 2d R. 603).

## I. Background

In his initial brief to this court, defendant raised the following issues on appeal: (1) whether the State used its peremptory challenges to discriminate on the basis of race in violation of *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712; (2) whether the evidence supported convictions for second degree murder rather than first degree murder; (3) whether the trial court should have allowed defendant to present final closing argument regarding the issue of second degree murder; (4) whether the State failed to disclose threats made against two witnesses until after trial in violation of *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194; (5) whether the death penalty was excessive; (6) whether the trial court erred in permitting the State to make a rebuttal argument at the death penalty hearing; and (7) whether the death penalty statute is unconstitutional. After we heard oral argument in this case, the Supreme Court announced its opinion in *J.E.B. v. Alabama ex rel. T.B.* (1994), 511 U.S. 127, 128 L. Ed. 2d 89, 114 S. Ct. 1419, prohibiting gender discrimination during jury selection. Defendant then filed a supplemental brief raising the issue of gender discrimination, and the State responded.

Because we find that defendant is entitled to new proceedings pursuant to *J.E.B.*, we remand this cause to the circuit court for a *Batson*-type hearing regarding

gender discrimination. We retain jurisdiction of this case. In this opinion, we discuss only those facts pertinent to the issue of gender discrimination and the rights of the parties under the intervening *J.E.B.* decision. We reserve ruling on any remaining issues.

During jury selection, the State used 4 of 17 peremptory challenges to remove all four black individuals remaining on the venire after one was stricken for cause. The four individuals challenged by the State were women. Ultimately, the State used 15 of 17 peremptory challenges to remove women from the venire. After *voir dire*, the jury consisted of five women and seven men.

After jury selection, defendant moved to dismiss the jury venire, pursuant to *Batson*. In *Batson*, the Supreme Court held that a prosecutor may not use peremptory challenges to exclude potential jurors from the jury on the basis of race. The Court found that such discrimination violates the equal protection clause and is therefore unconstitutional. The trial court accordingly conducted a *Batson* hearing. At the hearing, the prosecutor discussed his general strategy during *voir dire*:

"Another thing that I would point out is as a matter of trial strategy. I deliberately did not ask the court to ask the jurors any questions about their feelings towards firearms, nor did I ask the court to ask them any questions about their feelings towards gangs. I think that to do that unnecessarily highlights those two things, puts it in their mind that they ought to be concerned about gangs and guns. And I deliberately didn't do that because I think I have a pretty good idea at this time having prosecuted cases in this county for 12 years and having lived here all my life, which areas are subject to gang infestation and which aren't.

I would also like to point to the court that my counting of peremptory shows that the prosecution exercised two peremptories as to males and 15 as to females.

\* \* \*

The prosecution, according to my count, exercised two peremptory challenges as to males and 15 as to females.

Conversely, the defense exercised eight as to females and 12 as to males.

Another concern that myself and Mr. Tomczak had coming into this case was the concern about the sympathy factor when the jurors are confronted with the testimony of the defendant's mother. I would again point out to the court that based on my experience in trying jury cases, even in cases where I felt I had a lock solid case, I've seen juries stay out for hours and hours having felt sympathy for one or both parents of the defendant when they testified. That kind of thing happens and it's something to take into consideration."

Later in the *Batson* hearing, when discussing reasons for dismissing one of the prospective jurors, the prosecutor stated: "And again, I pointed out to the court I felt that I had to consider in my jury selection anyone that might feel sympathetic towards the defendant's mother." After the hearing, the trial judge concluded that the State had not discriminated on the basis of race.

After the jury reached its verdicts and after the parties submitted briefs and oral argument to this court, the Supreme Court announced its decision in *J.E.B.* In *J.E.B.*, the State of Alabama brought a paternity and child support suit in State court against the purported father. In that case, the State used 9 of 10 peremptory challenges to remove male venire members. The jury that was empaneled consisted solely of women. The jury found that the defendant was the father of the child, and the trial court ordered him to pay child support.

In his appeal to the Supreme Court, the defendant argued that the use of peremptory challenges to discriminate on the basis of gender violates the equal protection clause. He therefore asked the Court to extend its holding in *Batson* to prohibit gender discrimination during jury selection. The Supreme Court agreed to the defendant's request. In its holding, the Court

noted that historical discrimination against women has prevented them from serving on juries and perpetuated false stereotypes concerning the abilities of men and women. The Court stated that gender discrimination harms the litigants, the community, and prospective jurors who have been excluded.

In *J.E.B.*, the State argued that men might feel more sympathetic to the arguments of a man involved in a paternity action than women would. The Court rejected this argument, stating that it would "not accept as a defense to gender-based peremptory challenges 'the very stereotype the law condemns.' " (*J.E.B.*, 511 U.S. at 138, 128 L. Ed. 2d at 102-03, 114 S. Ct. at 1426, quoting *Powers v. Ohio* (1991), 499 U.S. 400, 410, 113 L. Ed. 2d 411, 424, 111 S. Ct. 1364, 1370.) In *J.E.B.*, the Court also stated that women could not be eliminated from the jury because they might be more sympathetic to the arguments of the complaining witness who bore the child.

## II. Gender Discrimination

In this case, defendant argues that the prosecutor used 15 of 17 peremptory challenges to eliminate women from the jury because of a concern that women jurors would feel sympathy for defendant's mother. Defendant contends that venire members were eliminated on the basis of gender. According to defendant, this conduct violates the Supreme Court's constitutional mandate in *J.E.B.*

We first note that *J.E.B.* arose after the trial was concluded in this case. We therefore consider whether *J.E.B.* applies retroactively to cases pending on appeal when it was announced. We find that it does. In *Griffith v. Kentucky* (1987), 479 U.S. 314, 328, 93 L. Ed. 2d 649, 661, 107 S. Ct. 708, 716, the Supreme Court held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." In *Griffith*,

the Court held specifically that the rule established in *Batson* was to apply retroactively. In *J.E.B.*, the Court extended *Batson* to prohibit the use of peremptory challenges to discriminate on the basis of gender. Thus, we conclude that *J.E.B.* applies to cases pending on direct appeal. See also *People v. Erickson* (1987), 117 Ill. 2d 271, 288-89.

Next, the State argues that defendant waived the gender discrimination issue by not raising it at trial. Defendant raised an objection to the selection of the jury on the basis of racial discrimination but did not object on the basis of gender discrimination. Ordinarily, a party must raise an objection at trial and in a post-trial motion to preserve the issue for review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) This court has held that a defendant who fails to raise a *Batson* objection before the jury is sworn has waived the issue. (See, *e.g.*, *People v. Evans* (1988), 125 Ill. 2d 50, 61-62; *People v. Pecor* (1992), 153 Ill. 2d 109, 125.) This court has applied the waiver rule to cases pending on appeal when *Batson* was first announced. (See *Pecor*, 153 Ill. 2d at 125.) A defendant who had made no objection to the use of peremptory challenges under *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, the law that existed before *Batson*, could not create a new claim on appeal. (See *Pecor*, 153 Ill. 2d at 125.) Thus, a defendant may waive a *Batson* claim by failing to object in a timely fashion at trial.

Defendant argues that, even if waived, the prosecutor's statements justify review under the plain error doctrine. (134 Ill. 2d R. 615(a).) This court will review an alleged error under the plain error doctrine if the evidence is closely balanced or if the alleged error is of such a magnitude that it denied defendant a fair trial. (*People v. Shields* (1991), 143 Ill. 2d 435, 446.) In *J.E.B.*, the Supreme Court stated that discrimination during

jury selection " 'raises serious questions as to the fairness of the proceedings conducted' " in the courtroom. (*J.E.B.*, 511 U.S. at 140, 128 L. Ed. 2d at 104, 114 S. Ct. at 1427, quoting *Edmonson v. Leesville Concrete Co.* (1991), 500 U.S. 614, 628, 114 L. Ed. 2d 660, 678, 111 S. Ct. 2077, 2087; see also *Powers v. Ohio* (1991), 499 U.S. 400, 418, 113 L. Ed. 2d 411, 430, 111 S. Ct. 1364, 1374-75 (Scalia, J., dissenting, joined by Rehnquist, C.J.).) We therefore review the record to determine whether the alleged error constitutes plain error.

In evaluating a claim of gender discrimination, a court uses the approach developed under *Batson* for claims of racial discrimination. (*J.E.B.*, 511 U.S. 127, 128 L. Ed. 2d 89, 114 S. Ct. 1419.) First, a defendant must make a *prima facie* showing that the State exercised peremptory challenges improperly. (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723; *Hernandez v. New York* (1991), 500 U.S. 352, 358, 114 L. Ed. 2d 395, 405, 111 S. Ct. 1859, 1866.) Second, if the trial court concludes that a *prima facie* showing has been made, the burden shifts to the State to give explanations for dismissing the potential jurors. (*Hernandez,* 500 U.S. at 358-59, 114 L. Ed. 2d at 405, 111 S. Ct. at 1866.) Finally, the trial court decides whether defendant has carried his burden of proving purposeful discrimination. *Hernandez*, 500 U.S. at 359, 114 L. Ed. 2d at 405, 111 S. Ct. at 1866.

To establish a *prima facie* case, defendant must show that "relevant circumstances raise an inference" that a potential juror was excluded improperly. (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1723; see also *People v. Andrews* (1992), 146 Ill. 2d 413, 424.) In this case, the State used 15 of 17 peremptory challenges to exclude women. A pattern of strikes is a factor this court will consider in evaluating a *Batson* claim but is not dispositive. See, *e.g.*, *People v. Hooper* (1987), 118 Ill. 2d 244, 247-49 (Ryan, J., specially concurring).

We next examine the prosecutor's statements at the *Batson* hearing. At the hearing, the prosecutor presented race-neutral reasons to the court to justify his exclusion of prospective jurors. He stated that he did not ask the prospective jurors about gangs and firearms but indicated that he was concerned about these factors in picking a jury. The prosecutor then stated that he had used 15 peremptory challenges against females and that he was concerned that jurors might feel sympathy for defendant's mother. In the context of a *Batson* hearing, the logical inference is that the prosecutor was excusing prospective jurors on the basis of gender, not race. Under the facts of this case, after considering the State's pattern of strikes and the statements of the prosecutor, we conclude that the record establishes a *prima facie* case of gender discrimination. Under the circumstances of this case, we find plain error.

In its supplemental brief to this court, the State offers gender-neutral explanations to explain its peremptory challenges. Defendant, however, has not had an opportunity to respond to these explanations. Because neither the defendant nor the State has had the opportunity to address these gender-neutral explanations to the circuit court, we do not address those explanations at this time.

Pursuant to this court's supervisory authority, we retain jurisdiction and remand this cause to the circuit court of Will County for a hearing to allow the State to present gender-neutral explanations. Defendant shall have an opportunity to respond. The circuit court is directed to determine whether the State's explanations are gender neutral pursuant to *J.E.B.* The circuit court shall make appropriate findings of fact and conclusions of law and file those findings and conclusions with the clerk of this court within 60 days of this decision together with a record of the proceedings on remand.

*Cause remanded with directions.*

JUSTICE MILLER, dissenting:

I cannot agree with the majority's decision to remand the present matter to the circuit court for further *Batson*-type proceedings on the defendant's charge of sex discrimination in the selection of his jury. (See *J.E.B. v. Alabama ex rel. T.B.* (1994), 511 U.S. 127, 128 L. Ed. 2d 89, 114 S. Ct. 1419; *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.) In reaching this result, the majority ignores a basic tenet of appellate review and enlarges considerably the plain error exception to the waiver rule.

Until today's decision, our cases had uniformly held that a defendant's failure to raise a *Batson* claim in the trial court would result in the default of that contention. (*People v. Fair* (1994), 159 Ill. 2d 51, 71; *People v. Evans* (1988), 125 Ill. 2d 50, 61-62.) Accordingly, irregularities in the *Batson* hearing are waived if not brought to the attention of the trial judge (*People v. Ramey* (1992), 151 Ill. 2d 498, 522-23), and deficiencies or ambiguities in the record must be construed against the defendant (*People v. Hudson* (1993), 157 Ill. 2d 401, 428-29; *People v. Henderson* (1990), 142 Ill. 2d 258, 279-80).

This court has found the waiver rule to be inapplicable only when the State itself has failed to object to the timeliness of the defendant's *Batson* claim (*Henderson*, 142 Ill. 2d at 283; *People v. Andrews* (1989), 132 Ill. 2d 451, 457-58; *People v. Harris* (1989), 129 Ill. 2d 123, 170-71) or when a ruling of the trial court has prevented the defense from preserving, on the record, information necessary for review of the issue (*People v. Pecor* (1992), 153 Ill. 2d 109, 117-21; *People v. Williams* (1991), 147 Ill. 2d 173, 219; *People v. McDonald* (1988), 125 Ill. 2d 182, 194-95). We have emphasized, however, the need for an appropriate objection even when the claim is based on a theory that, at the time of trial, had not yet been

recognized by the Supreme Court. (*Pecor*, 153 Ill. 2d at 125-26.) Thus, our cases have been consistent in requiring at a minimum that a defendant have made the *Batson* objection in the trial court in the first instance and have initially presented the issue to that court for its consideration. Even in the one prior case in which we addressed the merits of an arguably waived *Batson* objection, made after the jury was sworn, the defendant presented the issue first to the trial judge, who considered the question on its merits; moreover, there is no indication in the opinion in that case that the State objected at trial to the timeliness of the defendant's claim. *People v. Hudson* (1993), 157 Ill. 2d 401, 424-25.

In the present case, the defendant made no objection to the prosecutor's exercise of peremptory challenges against female members of the venire, and the trial judge never had the opportunity to consider this particular contention. The defendant did raise a *Batson* argument in the trial court, but his objection then was strictly limited to the prosecutor's alleged exclusion of prospective jurors on the basis of their race; at no point in the proceedings below did the defendant object to the removal of any female venire member on the basis of her sex. Ordinarily, then, we would consider the defendant's contention waived. The majority nonetheless chooses to grant the defendant relief, relying on a novel invocation of the plain error rule. See 134 Ill. 2d R. 615(a).

In applying the plain error doctrine to the present case, the majority simply finds that the nature of an alleged *Batson* error is so fundamental that the defendant's default must be excused. (164 Ill. 2d at 74-75.) The majority's reasoning proves too much, however. Under this analysis, no allegation of *Batson* error would ever be deemed waived—yet our own case law unequivocally demonstrates that a defendant's failure to make an

appropriate, timely objection will result in default of the issue.

Given the procedural posture of the case at bar, the majority's invocation of the plain error rule as its justification for review of the defendant's defaulted *Batson* claim is especially puzzling. In the present case, we are faced only with the possibility of error, not with the actual occurrence of error: the majority concludes merely that the defendant has established a *prima facie* case of discrimination in the selection of his jury and remands the matter to the circuit court so that the prosecution may be given the opportunity to explain its exercise of peremptory challenges against female members of the venire. Yet the existence of plain error, not possible error, is one of the prerequisites for application of the plain error doctrine. (See *United States v. Olano* (1993), 507 U.S. 725, 732, 123 L. Ed. 2d 508, 518, 113 S. Ct. 1770, 1777 ("The first limitation on appellate authority under Rule 52(b) [*i.e.*, the Federal plain error rule] is that there indeed be an 'error' "); *People v. Mitchell* (1992), 152 Ill. 2d 274, 335 (prosecutor's unobjected-to comments to jury "were not improper, much less plain error"); *People v. Harris* (1989), 132 Ill. 2d 366, 385-86 (admission of unobjected-to testimony "was not error, much less plain error"); *People v. Lann* (1994), 261 Ill. App. 3d 456, 477 (DiVito, P.J., dissenting) ("Illinois courts have always required that both the 'plain' and the 'error' limitations on plain error application be satisfied").) By granting the defendant relief on his waived *Batson* claim, the majority expands considerably the reach of the plain error doctrine, bringing within its scope not only actual errors, but potential ones as well.

The only plausible means by which the defendant should now be permitted to raise this argument is under the sixth amendment rubric of ineffective assistance of

counsel. Yet the defendant has failed to make that contention, and we should not attempt to do so for him. The defendant offered no semblance of an objection in the trial court to the prosecution's removal of women from the jury, although defendants in other cases have been raising the same or similar arguments for years. (See *People v. Washington* (1993), 257 Ill. App. 3d 26; *People v. Ashley* (1991), 207 Ill. App. 3d 984; *People v. Crowder* (1987), 161 Ill. App. 3d 1009.) The potential effect of today's decision on our appellate jurisprudence should not be discounted, inviting as it does the proliferation on review of otherwise waived issues. The defendant's failure to raise an appropriate objection at trial should bar him from obtaining relief on the defaulted claim at this stage of the proceedings, and, rather than remand the case to the circuit court, I would consider now the defendant's remaining allegations of error.

CHIEF JUSTICE BILANDIC and JUSTICE HEIPLE join in this dissent.