Docket Nos. 84062, 84063 cons.–Agenda 4–September 1999.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant and Cross-Appellee, v. RENALDO HUDSON, Appellee and Cross-

 Appellant.

Opinion filed March 2, 2001.

JUSTICE FREEMAN delivered the opinion of the court:

In June 1983, defendant, Renaldo Hudson, was indicted in the circuit court of Cook County on four counts of murder (Ill. Rev. Stat. 1983, ch. 38, par. 9–1(a)), armed robbery (Ill. Rev. Stat. 1983, ch. 38, par. 18–2), unlawful restraint (Ill. Rev. Stat. 1983, ch. 38, par. 10–3), aggravated arson (Ill. Rev. Stat. 1983, ch. 38, par. 20–1.1), residential burglary (Ill. Rev. Stat. 1983, ch. 38, par. 19–3); two counts of home invasion (Ill. Rev. Stat. 1983, ch. 38, par. 12–11); and three counts of armed violence (Ill. Rev. Stat. 1983, ch. 38, par. 33A–2). At the ensuing trial, a jury was unable to reach a verdict, and the circuit court declared a mistrial. After an unsuccessful interlocutory appeal to the appellate court (see 
People v. Hudson
, 171 Ill. App. 3d 1029 (1987)), a new trial was held. A jury convicted defendant of murder, armed robbery and aggravated arson. The same jury subsequently found defendant eligible for the death penalty under section 9–1(b)(6) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 9–1(b)(6)). The jury further concluded, after hearing the evidence in aggravation and mitigation, that there were no mitigating factors sufficient to preclude the imposition of the death penalty, and the circuit court sentenced defendant to death. This court affirmed the convictions and sentence on direct appeal, and the United States Supreme Court denied 
certiorari
. 
People v. Hudson
, 157 Ill. 2d 401 (1993), 
cert. denied
, 513 U.S. 844, 130 L. Ed. 2d 77, 115 S. Ct. 135 (1994).

Defendant thereafter timely filed a petition, to which an addendum was later filed, for relief pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122–1 
et seq.
 (West 1994)). The State moved to dismiss the petition. After a hearing, the circuit court granted the State’s motion with respect to all but one of the claims raised in the petition. As to the remaining issue, the circuit court ruled that, pursuant to this court’s decision in 
People v. Mack
, 167 Ill. 2d 525 (1995), defendant’s death sentence had to be vacated and a new sentencing hearing had to be held as a matter of law. Both the State and defendant appealed the orders (see 134 Ill. 2d R. 651(a)), and this court consolidated the appeals.

BACKGROUND

Defendant’s convictions stem from the June 7, 1983, murder and armed robbery of Folke Peterson. This court previously detailed the facts leading to defendant’s convictions in our opinion on direct appeal. See 
Hudson
, 157 Ill. 2d 401. In light of our disposition of the cause, we need not repeat those facts here. At the conclusion of the direct appeal proceedings, defendant filed, on April 3, 1995, a petition for post-conviction relief, which was amended on October 20, 1995. The petition contained allegations of ineffective assistance of both trial and appellate counsel, as well as a claim of gender discrimination during jury selection. Defendant subsequently filed an addendum to his amended petition, in which he raised an additional claim of ineffective assistance of appellate counsel based upon this court’s decision in 
People v. Mack
, 167 Ill. 2d 525 (1995).

The State moved to dismiss defendant’s petition in its entirety. After hearing arguments on the motion, the circuit court granted the State’s motion with respect to all of defendant’s claims, with the exception of the claim involving the death-eligibility verdict. The court concluded that 
Mack
 compelled vacatur of defendant’s death sentence and ordered a new sentencing hearing.

As noted previously, both the State and defendant appealed from the circuit court’s order. Defendant’s appeal concerns the propriety of the circuit court’s dismissal, without an evidentiary hearing, of, 
inter alia
, several claims pertaining to the guilt phase of his trial. We must consider these claims first, for if a new trial is necessary, then the need for the court-ordered new sentencing hearing (pursuant to 
Mack
) is obviated.

ANALYSIS

We begin our discussion by noting the familiar principles involved in post-conviction proceedings. The Illinois Post-Conviction Hearing Act (725 ILCS 5/122–1 
et seq.
 (West 1994)) provides a statutory remedy by which prisoners may collaterally attack a prior conviction and sentence. 
People v. Brisbon
, 164 Ill. 2d 236, 242 (1995). The scope of the proceeding is limited to constitutional matters that neither have been, nor could not have been, previously adjudicated. Any issues which could have been raised on direct appeal, but were not, are procedurally defaulted (
People v. Ruiz
, 132 Ill. 2d 1, 9 (1989)), and any issues which have previously been decided by a reviewing court are barred by the doctrine of 
res judicata
 (
People v. Silagy
, 116 Ill. 2d 357, 365 (1987)). Nevertheless, this court recognized, in 
People v. Owens
, 129 Ill. 2d 303, 317 (1989), that where fundamental fairness requires, “the rule of waiver will not be applied in post-conviction proceedings.” This recognition was premised upon the United States Supreme Court’s decision in 
Wainwright v. Sykes
, 433 U.S. 72, 53 L. Ed. 2d 594, 97 S. Ct. 2497 (1977). There, the Supreme Court described when it would be necessary for a court to consider the fundamental fairness principle when the prosecutor relies on a claim of waiver. As we explained in 
Owens
, the Supreme Court noted that “ ‘fundamental fairness’ requires courts to review procedurally defaulted claims in collateral proceedings only when a defendant shows cognizable ‘cause’ for his failure to make timely objection, and shows ‘actual prejudice’ flowing from the error now complained of.” 
Owens
, 129 Ill. 2d at 317. See also 
People v. Mahaffey
, No. 85215 (October 13, 2000); 
People v. Franklin
, 167 Ill. 2d 1, 20 (1995).

To that end, this court has noted that the term “cause” denotes “ ‘ “some objective factor external to the defense [that] impeded counsel’s efforts” to raise the claim’ in an earlier proceeding.” 
People v. Flores
, 153 Ill. 2d 264, 279 (1992), quoting 
McCleskey v. Zant
, 499 U.S. 467, 493, 113 L. Ed. 2d 517, 544, 111 S. Ct. 1454, 1470 (1991), quoting 
Murray v. Carrier
, 477 U.S. 478, 488, 91 L. Ed. 2d 397, 408, 106 S. Ct. 2639, 2645 (1986). Moreover, the United States Supreme Court has identified objective factors that constitute cause to include “ ‘ “interference by officials” ’ that makes compliance with the State’s procedural rule impracticable, and ‘a showing that the factual or legal basis for a claim was not reasonably available to counsel.’ [Citation.] In addition, constitutionally ‘[i]neffective assistance of counsel ... is cause.’ [Citation.] Attorney error short of ineffective assistance of counsel, however, does not constitute cause ***.” 
McCleskey
, 499 U.S. at 493-94, 113 L. Ed. 2d at 544, 111 S. Ct. at 1470. To establish actual prejudice, a petitioner “must show ‘not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.’ ” 
Murray
, 477 U.S. at 494, 91 L. Ed. 2d at 412, 106 S. Ct. at 2648, quoting 
United States v. Frady
, 456 U.S. 152, 170, 71 L. Ed. 2d 816, 832, 102 S. Ct. 1584, 1596 (1982). Moreover, even if a federal 
habeas
 petitioner cannot show cause and prejudice, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim. In order to demonstrate a miscarriage of justice to excuse the application of the procedural bar, a petitioner must show actual innocence. See 
Sawyer v. Whitley
, 505 U.S. 333, 120 L. Ed. 2d 269, 112 S. Ct. 2514 (1992). In the context of the death penalty, a defendant must show “by clear and convincing evidence that but for constitutional error, no reasonable juror would [have found him or her] eligible for the death penalty under [the applicable state] law.” 
Sawyer
, 505 U.S. at 348, 120 L. Ed. 2d at 285, 112 S. Ct. at 2523.

In addition to the procedural bars mentioned above, a defendant is not entitled to an evidentiary hearing unless the allegations set forth in the petition, as supported by the trial record or accompanying affidavits, make a substantial showing of a constitutional violation. 
People v. Coleman
, 183 Ill. 2d 366, 381 (1998). The dismissal of a post-conviction petition is warranted only when the petition’s allegations of fact–liberally construed in favor of the petitioner and in light of the original trial record–fail to make a substantial showing of a constitutional violation. 
Coleman
, 183 Ill. 2d at 382. On appeal, the circuit court’s decision to dismiss the petition without an evidentiary hearing is subject to plenary review. 
Coleman
, 183 Ill. 2d at 387-88.

Defendant maintains that he is entitled to a new trial because he was deprived of equal protection of the law under the fourteenth amendment to the United States Constitution by the State’s alleged use of a peremptory challenge to exclude a juror on the basis of gender. The arguments of the parties with respect to this issue, as well as our resolution of it, necessitate a review of what occurred during jury selection.

During 
voir dire
, the State exercised 11 peremptory challenges. The State excused five black venirepersons. See 
Hudson
, 157 Ill. 2d at 428-29. Six of the State’s peremptory challenges were used to strike women. After 
voir dire
, the jury consisted of seven women and five men.
(footnote: 1)
 The record reveals that, at the end of 
voir dire
, defendant, relying on 
Batson v. Kentucky
, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), moved to strike the jury on the grounds that the State had engaged in purposeful racial discrimination in exercising its peremptory challenges. Although the trial judge stated that he did not believe that defendant had established a 
prima facie
 case of racial discrimination during 
voir dire
, he asked the prosecutor to state on the record his reasons for striking the prospective African-American jurors. One of these prospective jurors was Robin Praser, a female. The trial judge ultimately denied the 
Batson
 challenge on the basis that the State’s reasons for striking the venirepersons in question were race-neutral.

This court, on direct appeal, rejected defendant’s contention that the State had engaged in purposeful racial discrimination during 
voir dire
. See 
Hudson
, 157 Ill. 2d at 424-34. We issued our decision on defendant’s direct appeal on November 18, 1993, and denied defendant’s subsequent petition for rehearing on January 31, 1994. Defendant then filed a petition for writ of 
certiorari
 before the United States Supreme Court, which was denied on October 3, 1994. While that petition was pending, however, the Supreme Court issued its decision in 
J.E.B. v. Alabama ex rel. T.B.
, 511 U.S. 127, 128 L. Ed. 2d 89, 114 S. Ct. 1419 (1994), in which the Court held that the equal protection clause of the fourteenth amendment prohibited gender discrimination by the State during jury selection.

In his post-conviction petition, defendant relied on 
J.E.B.
 to argue that the State had engaged in gender discrimination during 
voir dire
 because venireperson Praser had been excluded on the basis of gender. The circuit court dismissed this claim on the ground that defendant had failed to make a 
prima facie
 showing of gender discrimination. The court also stated, alternatively, that defendant had waived the claim because he had failed to raise it on direct appeal.

In analyzing defendant’s claim, we must first determine whether the holding in 
J.E.B.
 applies to this case. As this court has previously noted, judicial opinions announcing new constitutional rules applicable to criminal cases are retroactive to all cases pending on direct review at the time the new constitutional rule is declared. 
People. v. Erickson
, 117 Ill. 2d 271, 288 (1987), citing 
Griffith v. Kentucky
, 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708 (1987). In 
Griffith
, the Supreme Court ruled that its decision in 
Batson
 applied retroactively to all cases, state or federal, pending on direct review or not yet final. Given that 
J.E.B.
 is an extension of 
Batson
, we believe that 
Griffith
 controls on the question of retroactivity. Defendant’s petition for writ of 
certiorari
 was pending when the Court decided 
J.E.B
; consequently, the constitutional rule announced in 
J.E.B.
 is applicable. See 
People v. Blackwell
, 164 Ill. 2d 67, 74 (1995).

Having decided that the holding in 
J.E.B.
 applies to the case at bar, we must next determine whether defendant, as the State suggests, has procedurally defaulted the claim due to his failure to raise the issue on direct appeal. We note that defendant has established cause for his failure to raise the issue on direct appeal. Although arguments concerning gender bias during 
voir dire
 had been raised in other appellate cases at the time of defendant’s direct appeal (see 
People v. Washington
, 257 Ill. App. 3d 26, 31-34 (1993); 
People v. Mitchell
, 228 Ill. App. 3d 917, 927 (1992), 
aff’d in part, vacated in part & cause remanded
, 155 Ill. 2d 344, 356-57 (1993)), the United States Supreme Court did not definitively speak to the issue until its decision in 
J.E.B.
, which was announced while defendant’s petition for 
certiorari
 was pending. Defendant therefore has established cause, as he is seeking to assert a legal claim the basis of which was not readily available to counsel at the time the direct appeal was taken.

We must next determine whether defendant has established the requisite prejudice in this matter. As we explain below, we believe that an evidentiary hearing is needed in order to determine if defendant has established the needed prejudice to excuse the procedural default.

The crux of defendant’s claim is that the State discriminated against venireperson Praser because of her gender. According to the Supreme Court’s decision in 
J.E.B.
, a defendant must first make a 
prima facie
 showing that the State exercised the peremptory challenge to exclude the venireperson on account of gender. 
J.E.B.
, 511 U.S. at 144-45, 128 L. Ed. 2d at 106-07, 114 S. Ct. at 1429. As in a 
Batson
 challenge, if the trial court determines that a 
prima facie
 case has been made, the burden then shifts to the State to provide a gender-neutral explanation for the challenge at issue. 
J.E.B.
, 511 U.S. at 144-45, 128 L. Ed. 2d at 106-07, 114 S. Ct. at 1429. The State’s explanation need not rise to the level justifying a challenge for cause, but must be based on a juror characteristic other than gender and cannot be pretextual. 
J.E.B.
, 511 U.S. at 145, 128 L. Ed. 2d at 107, 114 S. Ct. at 1430. The Supreme Court has clarified that in order to satisfy this second step, “a ‘legitimate reason’ is not a reason that makes sense, but a reason that does not deny equal protection.” 
Purkett v. Elem
, 514 U.S. 765, 769, 131 L. Ed. 2d 834, 840, 115 S. Ct. 1769, 1771 (1995). 
The trial court must then assess the State’s explanations and determine whether the defendant has proved purposeful discrimination.

As noted, the post-conviction judge here ruled that defendant failed to make a 
prima facie
 showing of gender discrimination. To establish a 
prima facie
 showing of discrimination, a defendant must demonstrate that the State struck a member of a constitutionally protected class, and that all of the relevant circumstances raised an inference of intentional discrimination. See 
United States v. Cooper
, 19 F.3d 1154, 1159 (7th Cir. 1994). This court has noted that relevant circumstances include (i) the pattern of strikes against venirepersons comprised of the protected class, (ii) the prosecutor’s questions and statements during 
voir dire
 and in exercising the challenges, (iii) the disproportionate use of peremptory challenges against members of the protected class, (iv) the level of representation, with respect to the protected class, in the venire as compared to that of the jury, (v) whether the excluded members of the protected class were a heterogeneous group sharing only membership in the protected class as their only common characteristic, and (vii) whether the witnesses are also members of the protected class. 
People v. Edwards
, 144 Ill. 2d 108, 153 (1991).

Defendant argues, however, that this court should dispense with the 
prima facie
 requirement in this case because the State did assert on the record its reasons for the exclusion of venireperson Praser and the reasons demonstrate purposeful gender discrimination. Defendant points to the following comments, made by the prosecutor in response to defendant’s 
Batson
 motion at the conclusion of 
voir dire
:

“She [Praser] was unemployed, has not worked since last October. We look for working people when we pick a jury. We think they have more at stake in the community and are more inclined to follow the law as your Honor instructs them. Also her attention to detail was not good as indicated by the card. She did not fill the card out completely, left various areas blank. She showed a lack of attention to instructions. Her demeanor during the jury selection process was also inappropriate. She was inattentive during questioning and at that particular point in the jury selection process she was the least desirable of the jurors. We were looking for more men to balance out the jury. We had more women seated on the jury at that point.”

Defendant argues that this statement is an admission of discriminatory intent which requires that his conviction be reversed and a retrial be ordered.

In 
Batson
, the United States Supreme Court recognized that “[t]he harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermines public confidence in the fairness of our system of justice.” 
Batson
, 476 U.S. at 87, 90 L. Ed. 2d at 81, 106 S. Ct. at 1718. The Court held that the equal protection clause prohibits a prosecutor from using peremptory challenges solely on account of race or on the assumption that black jurors as a group will be unable to impartially consider the prosecution against a black defendant. 
Batson
, 476 U.S. at 95, 90 L. Ed. 2d at 87, 106 S. Ct. at 1722. In 
J.E.B.
, the Court addressed the question of whether the equal protection clause prohibits intentional discrimination on the basis of gender. In that case, a paternity suit, the State had used its peremptory challenges to remove nearly all of the men from the jury. The State asserted that men would be more receptive to the putative father while women would be more sympathetic to the child’s mother. 
J.E.B.
, 511 U.S. at 137-38, 128 L. Ed. 2d at 102, 114 S. Ct at 1426. The Court ruled that such a practice runs afoul of equal protection, holding that gender, like race, is an unconstitutional proxy for juror competence and impartiality, especially where the discrimination perpetuates invidious stereotypes about men and women. 
J.E.B.
, 511 U.S. at 138-40, 128 L. Ed. 2d at 102-04, 114 S. Ct. at 1426-27.

We note that in 
J.E.B.
, the State based its decision to strike almost all of the males from the jury on the perception that men might be more sympathetic to the putative father in a paternity suit and women might be more sympathetic to the mother. The Supreme Court refused to accept, as a defense, the same type of stereotype that which the law itself condemns. It is important to recognize that no such invidious stereotype has been advanced or suggested in the case at bar. Rather, we are faced with a statement that, on its face, indicates that the prosecutor was, among other things, attempting to seat a jury with a diverse character. 
We have found no case in Illinois on point with that at bar. The closest case, factually, is 
People v. Blackwell
, 164 Ill. 2d 67 (1995), in which this court was faced with another 
J.E.B.
-based claim of gender discrimination during 
voir dire
. As in this case, the 
J.E.B.
 decision post-dated the actual jury selection at issue. In 
Blackwell
, the prosecutor attempted to show, at the conclusion of 
voir dire
, that his strikes were not based on race. Of the State’s 17 peremptory challenges, 15 were used to remove women from the venire. The prosecutor stated that he was concerned “ ‘about the sympathy factor when the jurors are confronted with the testimony of the defendant’s mother.’ ” 
Blackwell
, 164 Ill. 2d at 72. The trial judge concluded that the strikes were not made on the basis of race. On direct appeal, however, the defendant argued that venire members were eliminated on the basis of gender. We held that the prosecutor’s statement that sympathy for the defendant’s mother was a gender-related reason because it was based on the theory that women, being women, would automatically sympathize with defendant’s mother and would be unable to be impartial. Along with the State’s pattern of strikes, we concluded that defendant had established a 
prima facie
 case of gender discrimination. See 
Blackwell
, 164 Ill. 2d at 74-76. Unlike 
Blackwell
, however, this case does not contain such a clear statement of invidious stereotyping and, for that reason, we do not find it helpful to our analysis.

Nevertheless, we believe that two cases from outside our jurisdiction provide some illumination to the questions raised by the facts in this case. We discuss each in turn.

In 
United States v. Tokars
, 95 F.3d 1520 (11th Cir. 1996), the defendants argued that the government improperly exercised its peremptory challenges to remove men from the venire. The government exercised its first ten strikes to remove men, and after a defense objection, it struck three more men in addition to three women. In responding to the defense’s assertion of improper striking, the government argued that a smaller number of women were in the venire and that the defense engaged in its own practice of striking women. The government conceded:

“ ‘We did not strike men just to strike men nor did we strike women just to strike women. *** In fact, the defendant could have wiped out the entire sex of women with their strikes and still had five to go and as a matter of principle, I think that every sex should be represented at a trial of this nature as should every race be represented and so we undertook a course of action anticipating the defendants would do what they did, which was strike almost in the exact opposite proportion of women to men ***.’ ” 
Tokars
, 95 F.3d at 1532.

The government also argued that men had not been declared to be cognizable group for purposes of a 
Batson
 challenge.
(footnote: 2) 

The trial judge agreed with the government that men did not constitute a cognizable group for purposes of 
Batson
. Nevertheless, the judge, noting that the federal circuit courts of appeal had split on the question and that 
J.E.B.
 was then pending in the Supreme Court, asked that the government place on the record its reasons for striking the men. The government proceeded to state gender-neutral reasons for each of the strikes. The trial judge overruled the defendants’ objections, and the case proceeded to trial with a jury composed of eight men and four women. 
Tokars
, 95 F.3d at 1532.

After the jury returned guilty verdicts, one of the defendants, Mason, moved for a new trial on the basis of the newly issued 
J.E.B.
 decision. The trial judge denied the motion, ruling that 
J.E.B.
 could not be given a retroactive application because it was not forecast by prior decisions to the same degree as was 
Batson
. The trial judge, however, also found that the government’s proffered reasons were nonpretextual. See 
Tokars
, 95 F.3d at 1532.

On appeal, the defendants challenged the district court’s ruling on the gender discrimination claim. They argued that the government’s statements following defendant Tokars’ challenge constituted a blatant admission of discriminatory intent that negated the relevance of any other nondiscriminatory reasons offered and required a new trial. The court of appeals first ruled that the trial court incorrectly concluded that 
J.E.B.
 could not be given retroactive application. 
Tokars
, 95 F.3d at 1532. Turning to the merits, the court noted that the case presented a “situation of mixed motives” and acknowledged that it “was apparent from the government’s statements following Tokars’s challenge that gender was indeed a factor that was considered in exercising its strikes.” 
Tokars
, 95 F.3d at 1533. Notwithstanding this fact, the court did not believe a new trial was required. Rather, the court noted that the Eleventh Circuit, along with the Second, Fourth, and Eighth Circuits, had adopted the “dual motivation analysis” for purposes of 
Batson
. 
Tokars
, 95 F.3d at 1533 (collecting cases).

“Dual motivation analysis grants the proponent of a strike the opportunity to raise an affirmative defense after the opponent of the strike has established a 
prima facie
 case of discrimination. [Citations.] In order to prove this affirmative defense, the proponent of the strike bears the burden of proving by a preponderance of the evidence that the strike would have been exercised even in the absence of the discriminatory motivation.” 
Tokars
, 95 F.3d at 1533.

The dual motivation analysis has its roots in equal protection cases which hold that an action motivated in part by an impermissible reason will nonetheless be valid if the same action would have been taken in the absence of the impermissible motivation. 
Tokars
, 95 F.3d at 1533 n.4 (citing 
Howard v. Senkowski
, 986 F.2d 24 (2d Cir. 1993), and 
Mt. Healthy City School District Board of Education v. Doyle
, 429 U.S. 274, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977)).

After carefully reviewing the record, the court of appeals concluded that the district court’s specific finding–that the government’s reasons for the strikes were gender-neutral–was not clearly erroneous: “The district court conducted a hearing during which it reviewed each of the government’s reasons for striking the jurors and found them to be gender-neutral. In making a finding of no pretext, the district court in effect made the appropriate findings necessary for dual motivation analysis. Applying dual motivation, we conclude that the government would have exercised the strikes in the absence of any discriminatory motivation.” 
Tokars
, 95 F.3d at 1533-34.

Tokars
 thus teaches that the mention of gender as a reason for exclusion, even if done for the purpose of attempting to seat a more representative and diverse jury, will trigger the second step of the inquiry set forth in 
Batson
. 
Tokars
 also illustrates that the mention of gender as a reason for exclusion, in such circumstances, does not always require a new trial. Another case, from Delaware and somewhat more apposite to the case at bar, compels a similar conclusion.

In 
Gattis v. Delaware
, 697 A.2d 1174 (Del. 1997), the defendant raised a 
J.E.B.
 violation for the first time on post-conviction proceedings.
(footnote: 3) The post-conviction judge dismissed the claims, but the Delaware Supreme Court summarily remanded the matter to the post-conviction judge for further inquiry into whether the State improperly excluded a potential juror for gender-related reasons. See 
Gattis
, 697 A.2d at 1176 n.4. The question arose in the following factual context as set forth in the memorandum of opinion filed on remand. See 
State v. Gattis
, No. 90004576DI (Del. Super. December 11, 1996).

During jury selection, a prospective juror, Wilfred Moore, had trouble articulating whether he would be able to follow the death penalty law. After several questions, the prosecutor sought to strike the juror for cause because he believed Moore was uncomfortable being asked to vote for death and unsure of his ability to do so. The trial judge, however, did not believe that Moore’s ambivalence about the death penalty was strong enough to prevent Moore from following the court’s instruction or his oath as a juror. The 
prosecutor then resorted to utilizing a peremptory challenge to strike Moore. The prosecutor also stated for the record his reasons for his action since a question had previously been raised concerning a possible 
Batson
 violation:

“Number One, I believe that this juror was very, very conservative in his application of the possible application of the death penalty. *** Number Two, he is an older gentleman and we have, I believe four or five older gentlemen on the jury panel already. And I would suggest that it’s the State’s point of view that we would prefer to have some more women on the jury.” 
Gattis
, No. 900004576DI.

The trial judge remarked that in light of Moore’s responses, it “was not surprising that the State utilized a challenge and I’m convinced beyond any doubt whatsoever that the challenge was not predicated upon racial motives.” 
Gattis
, No. 900004576DI. The jury ultimately found the defendant guilty and sentenced him to death.

As noted, the gender claim arose during post-conviction proceedings. At the remand proceedings ordered by the Delaware Supreme Court, the defendant argued that the prosecution removed Moore for gender-related reasons in violation of the equal protection clause and 
J.E.B.
 The State argued that even though one of the grounds for the prosecutor’s challenge was based on gender, another ground was Moore’s reluctance to impose the death penalty. For that reason, the State maintained that the paramount reason for the strike was gender-neutral. In evaluating these contentions, the post-conviction judge utilized the dual motivation analysis adopted in the federal courts, but first noted that “the need for a 
prima facie
 showing of intentional discrimination is obviated by the fact that the State in effect concedes that gender played a part in its decision.” 
Gattis
, No. 900004576DI. The post-conviction judge ultimately concluded that the State carried its burden of showing that the prosecutor would have challenged Moore even in the absence of any gender-related reason.

The Delaware Supreme Court affirmed the post-conviction judge’s findings in all respects. The court initially endorsed the judge’s use of the dual motivation analysis. See 
Gattis
, 697 A.2d at 1184, citing 
United States v. Darden
, 70 F.3d 1507, 1531 (8th Cir. 1995). 
Moreover, the court stated that it would not disturb the post-conviction judge’s specific finding that gender was not the prosecution’s primary motivation for striking Moore, noting that the “ ‘evaluation of the prosecutor’s state of mind based on demeanor and credibility lies peculiarly within a trial judge’s province.’ ” 
Gattis
, 697 A.2d at 1184 n.40, quoting 
Hernandez v. New York
, 500 U.S. 352, 365, 114 L. Ed. 2d 395, 409, 111 S. Ct. 1859, 1869 (1991). These state court proceedings on the issue of gender discrimination during jury selection were upheld by the United States district court during federal 
habeas corpus
 proceedings. See 
Gattis v. Delaware
, 46 F. Supp. 2d 344 (D. Del. 1999).

Although both the 
Tokars
 and 
Gattis
 cases differ factually in some ways from the case at bar, certain similarities cannot be overlooked. For example, as in this case, both cases deal with 
voir dires
 that took place before the decision in 
J.E.B.
 was announced. In addition, both cases deal with situations in which the prosecution stated that it was seeking gender “balance” on the jury. In both cases, this fact caused the courts to require the prosecution to demonstrate that the strike would have nevertheless been exercised even if an improper factor had not motivated in part the decision to strike. As in these aforementioned cases, one of the reasons articulated by the prosecutor for striking venireperson Praser raises the specter of motivation driven by considerations of gender. We, therefore, believe that under these circumstances, the post-conviction judge here wrongly dismissed the claim on the basis of defendant’s failure to establish a 
prima facie
 case of gender discrimination. An evidentiary hearing must be held to determine whether the State would have struck Praser even in the absence of any gender-related reasons. Moreover, without findings from such a hearing, it is impossible to determine whether defendant has established the requisite prejudice in order to obtain post-conviction relief, 
i.e.
, a new trial, on the basis of his claim of gender discrimination during jury selection. See 
United States ex rel. Veal v. DeRobertis
, 693 F.2d 642 (7th Cir. 1982) (remanding cause with directions that a hearing be held to determine whether the defendant satisfied the cause and prejudice standard). If the facts at the hearing demonstrate that the State would have struck Praser even in the absence of the gender-related reason, then defendant cannot be said to have established prejudice and this claim should be denied. If the State is unable to prove the proposition, however, then defendant has satisfied his burden of establishing prejudice and relief should be granted.

To that end, we believe that the 
Gattis
 opinions provide a blueprint for the type of inquiry that should be utilized in this case. In evaluating the claim, the court should consider “all relevant circumstances.” 
Batson
, 476 U.S. at 96, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723. As the Supreme Court acknowledged in 
Batson
, the decision entails a “ ‘factual inquiry’ that ‘takes into account all possible explanatory factors’ in the particular case.” 
Batson
, 476 U.S. at 95, 90 L. Ed. 2d at 87, 106 S. Ct. at 1722, quoting 
Alexander v. Louisiana
, 405 U.S. 625, 630, 31 L. Ed. 2d 536, 541-42, 92 S. Ct. 1221, 1225 (1972). One relevant aspect of the inquiry is the prosecutor’s credibility. The Supreme Court has noted that a trial judge’s finding as to intent is a “pure issue of fact” and that the “evaluation of the prosecutor’s state of mind based on demeanor and credibility lies ‘peculiarly within a trial judge’s province.’ ” 
Hernandez
, 500 U.S. at 365, 114 L. Ed. 2d at 409, 111 S. Ct. at 1869, quoting 
Wainwright v. Witt
, 469 U.S. 412, 428, 83 L. Ed. 2d 841, 854, 105 S. Ct. 844, 854 (1985).

Finally, in adopting the dual motivation analysis in this case, we echo the sentiments of the Eleventh Circuit in 
Tokars
 regarding its future use:

“[R]esort to dual motivation will rarely be necessary. By now, no competent prosecutor or defense attorney is unaware of the fact that strikes on the basis of race or gender are prohibited. The procedural posture of this case is unusual in that the law at the time of trial was unclear as to whether 
Batson
 would be extended to gender.” 
Tokars
, 95 F.3d at 1534.

We are confident that the circumstances present in this case will not be repeated in future cases. 

Pursuant to this court’s supervisory authority, we retain jurisdiction and remand this cause to the circuit court of Cook County for a hearing to determine whether the State would have struck Praser even in the absence of the gender-related motivation. The circuit court is directed to make 
appropriate findings of fact and conclusions of law as to this question. The circuit court’s decision, together with a record of the proceedings on remand, shall be filed with the clerk of this court within 90 days of the date that this decision becomes final.

CONCLUSION

The cause is remanded with directions to the circuit court to hold an evidentiary hearing in the manner described in this opinion.

Cause remanded with directions.

JUSTICE GARMAN took no part in the consideration or decision of this case.

CHIEF JUSTICE HARRISON, dissenting:

Robin Praser is a black woman. Defendant originally charged that the State had excluded her from the jury because she is black, an action which would violate 
Batson v. Kentucky
, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986). In response to that charge, the State asserted that the color of Praser’s skin had nothing to do with its decision. According to the State, the real reason it struck her from the jury pool was because, among other things, it wanted “more men to balance out the jury.” 
People v. Hudson
, 157 Ill. 2d 401, 432 (1993).

Although gender can be used as a pretext for racial discrimination (
J.E.B. v. Alabama ex rel. T.B.
, 511 U.S. 127, 145, 128 L. Ed. 2d 89, 107, 114 S. Ct. 1419, 1430 (1994)) our court has held that it was not pretextual in this case. 
Hudson
, 157 Ill. 2d at 432. For the purposes of this discussion, I am therefore willing to accept the State’s explanation. Praser was not sent home because she was African American. She was sent home because, 
inter alia,
 the State wanted more men and she was not a man.

Excluding a woman from the jury in order to obtain more men is directly analogous to excluding African Americans in order to obtain more whites. Favoring whites over African Americans is plainly prohibited. Favoring men over women is equally unlawful. Just as the jury selection process must be race neutral, it must be blind to gender. Under the equal protection clause of the fourteenth amendment (U.S. Const., amend. XIV), the government may not exclude a person from jury service based on whether the person is a man or a woman. 
J.E.B. v. Alabama ex rel. T.B.
, 511 U.S. 127, 128 L. Ed. 2d 89, 114 S. Ct. 1419 (1994). Exclusion of even one potential juror on the basis of gender requires reversal. 
People v. Blackwell
, 171 Ill. 2d 338, 349 (1996).

There is no need to conduct another evidentiary hearing on the State’s motives for excluding Praser in this case. The State was quite clear about why it did what it did. As previously indicated, Praser was denied a seat on the jury because she was not a man. To be sure, other reasons were also given for why Praser was sent home, specifically, her unemployment, inappropriate demeanor, and lack of attention to detail and instructions. Nevertheless, the existence of valid, nondiscriminatory explanations cannot counteract an overtly stated and blatantly unlawful motive. As legitimate as the other reasons given by the State may have been, it is clear that the State would not have acted as it did had it not been for the additional fact of Praser’s gender.

The majority would surely have bristled had the State contended that Praser was excused because she was an unemployed, inattentive 
black person
 who acted inappropriately. I cannot imagine why the majority thinks it any better for the State to have excluded her on the grounds that she was an unemployed, inattentive 
woman
 who acted inappropriately.

Under the law, Praser’s sex simply should not have entered into the State’s determination. No matter how many other women were already on the jury, the State had no right to take Praser’s gender into account when it considered her. Achieving gender “balance” is not a legally defensible objective. Rather, it is an example of precisely the sort of gender stereotyping condemned by the United States Supreme Court in 
J.E.B. v. Alabama ex rel. T.B.
, 511 U.S. 127, 128 L. Ed. 2d 89, 114 S. Ct. 1419 (1994). It cannot be tolerated. As the Court wrote in that case:

“All persons, when granted the opportunity to serve on a jury, have the right not to be excluded summarily because of discriminatory and stereotypical presumptions that reflect and reinforce patterns of historical discrimination. Striking individual jurors on the assumption that they hold particular views simply because of their gender is ‘practically a brand upon them, affixed by the law, an assertion of their inferiority.’ [Citation.] It denigrates the dignity of the excluded juror, and, for a woman, reinvokes a history of exclusion from political participation. The message it sends to all those in the courtroom, and all those who may later learn of the discriminatory act, is that certain individuals, for no reason other than gender, are presumed unqualified by state actors to decide important questions upon which reasonable persons could disagree.” 
J.E.B.
, 511 U.S. at 141-42, 128 L. Ed. 2d at 105, 114 S. Ct. at 1428.

The State should not be allowed to escape the proscriptions of 
J.E.B.
 by being given the opportunity to show that it would have excluded Praser even if she had not been a woman. The State has already been given the opportunity to explain its decision to exclude Praser, and it admitted taking gender into account. Nearly a decade has passed since then. At this point, it is difficult to see how the State could credibly establish that gender did not matter after all.

Even absent the lapse of time, problems of proving an alternative and independent motivation would be substantial. Ultimately, the issue will turn on the representations of the individual prosecutors. While there may be some external corroboration for why they excluded persons of one sex, that is not enough. Prosecutors must also explain why they failed to strike persons of the opposite sex. For that there will be no record. Prosecutors do not memorialize why they have accepted a juror. As a result, the prosecutor’s 
post hoc
 explanations will be virtually unchallengeable. As long as the court finds the prosecutor credible, the prosecutor’s justifications will be controlling.

The consequences of such a system are easy to foresee. If there is no meaningful review of a prosecutor’s claim that he would have excluded a woman anyway, even if she had not been female, hearings regarding the prosecutor’s motives will be reduced to an exercise in creative after-the-fact rationalization. Prosecutors will almost always be able to generate an alternative, non-gender-based explanation for their actions, and courts will have little choice but to accept their explanations at face value. The result is that 
J.E.B.
 will be rendered a nullity.

Justice Thurgood Marshall addressed the same problem in criticizing application of the “dual motivation” test to cases involving 
Batson
 and racial discrimination in jury selection. He wrote:

“To excuse *** prejudice when it does surface, on the ground that a prosecutor can also articulate nonracial factors for his challenges, would be absurd. 
Batson
 would thereby become irrelevant, and racial discrimination in jury selection, perhaps the greatest embarrassment in the administration of our criminal justice system, would go undeterred. If such ‘smoking guns’ are ignored, we have little hope of combating the more subtle forms of racial discrimination.” 
Wilkerson v. Texas
, 493 U.S. 924, 928, 107 L. Ed. 2d 272, 275, 110 S. Ct. 292, 295 (1989) (Marshall, J., dissenting on denial of
 cert.
, joined by Brennan, J.).

I agree with Justice Marshall, not with the lower court decisions cited by the majority in this case. The “dual motivation” test cannot be squared with the principles underlying 
Batson
 and 
J.E.B. 
If prosecutors must provide a race- and gender-neutral basis for a peremptory challenge, and the law says they must, their explanation must be free from any taint of racial or gender bias. The explanation proffered by the prosecution in this case does not meet that test. Defendant should therefore be granted a new trial.

FOOTNOTES
1:     
1
Juror Loretta Buchanan was replaced by alternate juror Joseph Cooper during the sentencing hearing. As a result, the sentencing jury consisted of six men and six women.

2:     
2
The Supreme Court’s decision in 
J.E.B.
 was announced after the jury in 
Tokars
 returned its verdict.

3:     
3
Apparently, the decision in 
J.E.B.
 was announced at some point in time between the issuance of the direct appeal opinion and the filing of the defendant’s post-conviction petition.