NOTICE

Decision filed 02/27/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 130166-U

NO. 5-13-0166

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 11-CF-1388 |
| | ) | |
| KENNY WICKS, | ) | Honorable |
| | ) | Michael N. Cook, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Overstreet and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We remand for the limited purpose of a proper *Batson* hearing in this case, because the trial judge did not conduct an adequate legal analysis of the defendant's claim that the State engaged in discrimination, on the basis of race, during the selection of the jury that served as the trier of fact at the defendant's first degree murder trial.

¶ 2    The defendant, Kenny Wicks, appeals his conviction and sentence, following a trial by jury in the circuit court of St. Clair County, for first degree murder. For the following reasons, we remand for the limited purpose of a proper *Batson* hearing in this case, because the trial judge did not conduct an adequate legal analysis of the defendant's claim that the State engaged in discrimination, on the basis of race, during the selection of the jury that served as the trier of fact at the defendant's trial.

1

¶ 3                                    I. BACKGROUND

¶ 4      The facts necessary to our disposition of this direct appeal follow. On September 22, 2011, the defendant was charged, by criminal complaint, with first degree murder for his role in the shooting death of James Earl Rogers, Jr., on June 13, 2007. The criminal complaint was thereafter superceded by a criminal indictment that made the same allegation. Prior to trial, the State filed a notice of intent to seek enhanced sentencing on the basis of the State's allegation that it would prove that the defendant personally discharged the firearm which proximately caused the death of Rogers. The State's filing noted that, if proven, the firearm enhancement would add, by operation of law, a minimum of 25 years of imprisonment to the sentence received by the defendant.

¶ 5      The case proceeded to trial, with the jury selection process taking place on the afternoon of January 28, 2013, following the resolution, that morning, of other pretrial matters. The potential jurors were questioned first by the trial judge, then by each of the parties. Following questioning, after the parties and the trial judge were outside the presence of the pool of potential jurors, each party exercised peremptory strikes and strikes for cause. Thereafter, the following colloquy occurred, which we note accurately summarized the contentions of the parties with regard to the peremptory strikes that had been used:

"THE COURT: You had a motion, [defense counsel]?

DEFENSE COUNSEL: Yeah. I want to have—I always—to protect the record, I would like to have a *Batson* challenge on this jury. The jury, of course, has one black person and eleven white people. And it's not a representative jury of St. Clair County. And it's—it possibly is not a representative jury for the trial of this case in which a black man goes on trial. I particularly place emphasis on the fact that juror number 12, Jonetta Watson, was struck—I guess was stricken by the State's Attorney's office for no cause or

2

no reason. There was absolutely nothing that she said or implied or any associations or any work situations which would require anybody to strike her as a juror except the fact that she is black.

THE COURT: Thank you. State?

[COUNSEL FOR THE STATE]: Judge, for defense counsel to go towards a *Batson* challenge, I believe that there would have to be a finding of a pattern. There is no pattern because only one juror was struck by the State that was African American in race. However, one African American was struck by the defense, and it was not for cause. That would be seat 10, number 261, Patrice Howard. So we struck one peremptorily. He struck one peremptorily. And everybody else who was African American was stricken for cause. So I would ask the court to deny the motion at this time.

THE COURT: The State is correct. The defense counsel would—is required to show a pattern. And striking one juror does not rise to the level of a pattern. And as the State indicated, [defense counsel] used one of his peremptory challenges on an African American as well. The [c]ourt denies the motion for the *Batson* challenge."

¶ 6    The following morning, the presentation of witnesses in the defendant's jury trial commenced. For the reasons explained below, the testimony presented is not relevant to the dispositive issue before this court at this time. At the conclusion of the trial, the jury found that the defendant was guilty of first degree murder, and the jury also found that the allegation that the defendant had personally discharged a firearm that proximately caused great bodily harm, permanent disability, permanent disfigurement, or death to another person was proven. Thereafter, the defendant was sentenced to 20 years of imprisonment on the conviction for first degree murder, with 25 more years added to the sentence because of the firearm enhancement.

3

The entire sentence of 45 years was to be served at 100% and followed by 3 years of mandatory supervised release. This timely appeal followed.

¶ 7                                         II. ANALYSIS

¶ 8     The defendant raises four arguments in this appeal. However, we conclude, for the following reasons, that it is appropriate to address only the first of those arguments at this time. The argument we must address is the defendant's contention that the trial judge did not conduct an adequate legal analysis of the defendant's claim of discrimination, on the basis of race, during the selection of the jury that served as the trier of fact in this case.

¶ 9     As this court has recognized, there is a three-step process to evaluate claims of alleged discrimination on the basis of race during jury selection. *People v. Shaw*, 2014 IL App (4th) 121157, ¶ 17. The process was established by the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79 (1986). *Shaw*, 2014 IL App (4th) 121157, ¶ 17. First, the defendant must make a *prima facie* showing that the State has exercised a peremptory challenge on the basis of race. *Id*. ¶ 18. The threshold for the *prima facie* showing "is not high," and is satisfied if the defendant produces evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred. *Id*. The trial judge is to consider the totality of the relevant facts as well as all relevant circumstances surrounding the exercise of the peremptory challenge to determine if they give rise to a discriminatory purpose. *Id*. Specifically, the trial judge needs to consider, *inter alia*, the following seven factors: (1) racial identity between the party that has exercised the peremptory challenge and the excluded potential juror or jurors, (2) a pattern of strikes against African-American potential jurors, (3) a disproportionate use of peremptory challenges against African-American potential jurors, (4) the level of African-American representation in the jury pool, as compared to the jury as selected, (5) the State's questions and statements of the challenging party during the *voir dire* process and while exercising peremptory

4

challenges, (6) whether the African-American potential jurors who were excluded were a heterogenous group that shared race as their only common characteristic, and (7) the race of the defendant, the victim, and the witnesses. *Id*. The trial judge also considers as a factor what is known as a comparative juror analysis, in which the trial judge examines the State's questions to the prospective jurors, and the responses of the prospective jurors to those questions, to determine if the State has treated otherwise similar jurors differently because of their membership in a particular group. *Id*. Upon completion of the foregoing, if the trial judge concludes the low threshold for making a *prima facie* showing pursuant to *Batson* has been met, the trial judge proceeds to the second step in the process. *Id*.

¶ 10    The second step in the process is for the State to attempt to articulate a race-neutral reason for striking the potential juror. *Id*. ¶ 19. If the State establishes a race-neutral reason for striking the potential juror, the defendant is given the opportunity to attempt to rebut the proffered reason as pretextual. *Id*. Thereafter, during the third step in the process, the trial judge is to determine whether the defendant has shown purposeful discrimination, in light of the submissions of the parties. *Id*. ¶ 20. To make this determination, the trial judge evaluates not only whether the demeanor of the State belies discriminatory intent, but also whether the demeanor of the potential juror can credibly be said to have exhibited the basis for the strike attributed to the potential juror by the State. *Id*.

¶ 11    When this court has reviewed a trial judge's execution of the three-step *Batson* process— which is often called a *Batson* hearing, even if no separate formal hearing is held—we have noted that although "evidence of a pattern of discriminatory strikes is one factor" the trial judge must consider to determine if the low threshold for making a *prima facie* showing has been satisfied, "it is not a dispositive factor." *Id*. ¶ 25 (citing *People v. Blackwell*, 164 Ill. 2d 67, 75 (1995)). We have noted this because it is clear that if the absence of a pattern of strikes were

5

enough, by itself, to prevent the *prima facie* showing necessary to move to the second step of the process, the State would always be able to exercise at least one peremptory strike in a discriminatory manner, without fear of being held to its constitutional responsibilities. *Id*. We have rejected such a "one free discriminatory strike" rule, because it is inconsistent with *Batson* and its progeny, which recognize that the exclusion of even one potential juror on the basis of race is unconstitutional and requires the reversal of any criminal conviction in the proceedings that followed the *Batson* violation. *Id*.

¶ 12    We have also noted the well-established rule that the trial judge must not combine the first and second steps of the *Batson* process in a manner that diminishes the distinction between the requisite *prima facie* showing and the subsequent attempted production, by the State, of neutral explanations for its use of peremptory challenges. *Id*. ¶ 26. Instead, the trial judge should "proceed[ ] methodically through the required three-step *Batson* process," which means completing the first step of the analysis and determining whether the low threshold for making a *prima facie* showing has been satisfied "before proceeding to the second step." *Id*. As we have recognized, "*Batson* and its progreny have established a clear three-step process that trial courts must follow when evaluating a claim of discrimination during jury selection," and when trial judges fail to follow this clear process, it can create a situation where "the record is insufficient for us to conduct a meaningful review of [the] defendant's *Batson* challenges." *Id*. ¶ 30. In such circumstances, the proper course of action is for this court "to remand to the trial court for the limited purpose of conducting a full *Batson* hearing." *Id*. We have set out, in detail, the procedures to be employed on remand, in accordance with the three-step process described above. *Id*. ¶¶ 33-35. In so doing, we have recognized the difficulties that the passage of time may create, particularly in light of credibility determinations that must be made by the trial judge if

6

the process reaches the third step. *Id.* ¶ 35. In conjunction with the limited remand, we withhold our disposition of the remaining issues on appeal. *Id.* ¶ 36.

¶ 13 In this appeal, in response to the defendant's *Batson* claim, the State seeks to invoke the undisputed general proposition of law that a reviewing court will ordinarily presume that a trial judge knows and follows the law unless the record indicates otherwise. See, *e.g.*, *People v. Woolley*, 178 Ill. 2d 175, 200 (1997). However, we agree with the defendant that this is a case where the record before us clearly indicates otherwise, and in fact demonstrates unequivocally that the trial judge did not know and follow the law, because he rendered his ruling on the defendant's *Batson* claim without first following the required aforementioned *Batson* procedure. As described above, in the trial court the State attempted to overcome the defendant's *Batson* claim by contending that "there would have to be a finding of a pattern" of discriminatory strikes for a viable *Batson* claim to exist. Moments later, the trial judge's express statement of his view on the law of the matter was the following:

> "The State is correct. The defense counsel would—is required to show a pattern. And striking one juror does not rise to the level of a pattern. And as the State indicated, [defense counsel] used one of his peremptory challenges on an African American as well. The [c]ourt denies the motion for the *Batson* challenge."

This statement reflected an inaccurate understanding not only of one of the points of law relevant to the defendant's *Batson* claim (see, *e.g.*, *Shaw*, 2014 IL App (4th) 121157, ¶ 25 (although evidence of pattern of discriminatory strikes is one factor trial judge must consider to determine if the low threshold for making a *prima facie* showing has been satisfied, it is not a dispositive factor)), but also of the entire procedure the judge was required to follow to assess the defendant's claim, set forth in detail above. With regard to the point of law in question, also as set forth above, the legal position adopted by the trial judge in this case was not permissible

7

because thereunder the State would always be able to exercise at least one peremptory strike in a discriminatory manner, without fear of being held to its constitutional responsibilities. See, *e.g.*, *id.* This is inconsistent with *Batson* and its progeny, which recognize that the exclusion of even one potential juror on the basis of race is unconstitutional. *Id.* With regard to procedure, unfortunately the trial judge relied on his misunderstanding of the law to short-circuit—in fact, to abruptly terminate—the process by which he was required to evaluate the defendant's claim. As a result, the record is insufficient for this court to conduct a meaningful review of the defendant's *Batson* challenge. Accordingly, remand to the trial court for the limited purpose of conducting a legally adequate *Batson* hearing is required, to determine whether a *Batson* violation occurred in this case. *Id.* ¶ 30.

¶ 14    Because of our conclusion that remand for a proper *Batson* hearing is required, we withhold disposition of the other issues raised by the defendant on appeal. *Id.* ¶ 36. We direct the trial judge who handles the case on remand to file the trial judge's findings of fact and conclusions of law with the clerk of this court within 60 days of the trial judge's decision, along with the record of proceedings on remand. *Id.* This court retains jurisdiction to review the trial judge's ruling after remand, and to address the remaining issues raised by the defendant in this appeal, if those issues have not been rendered moot by the trial judge's ruling. *Id.* If needed, we will allow the parties to file supplemental briefs in this court that address any issues which arise from the limited remand for a proper *Batson* hearing. *Id.*

¶ 15                                    III. CONCLUSION

¶ 16    For the foregoing reasons, we remand with directions for proceedings consistent with this order.

¶ 17    Remanded with directions.